IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLARKE TRANSPORTATION SERVICES, INC. | : : : : : : | CIVIL ACTION  NO. 06-785 |
| v. | | |
| ANNEMARIE HASKINS, et al. | | |

**MEMORANDUM AND ORDER**

**Juan R. Sánchez, J.**                                                                                      **June 8, 2006**

      Clarke Transportation Services, Inc. (Clarke) asks this Court to stop two former employees, Defendants Annemarie Haskins and Ronald Skelston, from competing in the intermodal transportation services business by commanding Haskins to terminate her competitive business and Skelston to return Clarke documents.  Haskins contends Clarke lacks standing to seek preliminary injunctive relief.  After careful review of the record evidence, I find Clarke has standing but my decision to enforce the restrictive covenants as to Haskins hinges on one of the four elements for preliminary injunctive relief - the irreparable harm prong.  I will focus my analysis on this factor and will deny Clarke's Motion for Temporary and Permanent Injunctive Relief[1] as to Haskins because Clarke has failed to establish irreparable harm.  I do find sufficient evidence to support Clarke's

---

[1] Clarke styled its motion for injunctive relief as "Order to Show Cause with Temporary Restraints" and labeled its memorandum of law in support of the motion as one for "Temporary and Permanent Injunctive Relief."  I denied Clarke's request for a temporary restraining order and, by Order dated February 27, 2006, scheduled a hearing on Clarke's motion.  The Order directed Clarke to serve a copy of the Complaint, its memorandum of law in support of the motion, and the Order itself on all the defendants.  Defendants responded to the motion and memorandum of law on March 2, 2006, and this Court held a hearing the following day where all parties, with representation of counsel, fully participated and had the opportunity to present evidence.  The Court further permitted the parties to submit additional evidence after the hearing.  Accordingly, I construe the motion as one for preliminary injunctive relief, rather than a temporary restraining order.

1

request to enforce the Confidential Information provision in Skelston's employment agreement but only as to the April, 2005 document related to intermodal tariffs.

**ANALYSIS**

As an initial matter, Defendants rely on Federal Rule of Civil Procedure 17(a) to contend Clarke is not a real party in interest because PBB Global Logistics Inc. (PBB), not Clarke, was Haskins's employer as of June 1, 2004 and Clarke is no longer an ongoing entity. I disagree. Haskins entered into the Asset Purchase Agreement, Employment Agreement and Non-Competition Agreement with Clarke in January, 2001 and effectively was employed by Clarke since that time. Clarke's acquisition by PBB did not alter Haskins employment relationship with Clarke. The Letter Agreement Haskins executed on June 1, 2004 identifies the employer as PBB or one of its affiliates. Clarke became a subsidiary of PBB upon the acquisition and thus became an affiliate. Moreover, the Letter Agreement anticipated Haskins would later sign an employment contract which would incorporate the terms of the agreement. The subsequent contract makes clear Clarke was Haskins's employer. The fact Haskins failed to execute the contract does not alter Clarke's status as her employer. Nor can Haskins make a credible claim she is employed by PBB given her W-2 forms continued to list Clarke as her employer after the acquisition and she remained on Clarke's payroll as of December, 2005.

I further find Clarke is a separate business entity that has continued to operate since the acquisition. PBB's corporate structure identifies Clarke as a subsidiary of PBB Global Logistics, Inc. Clarke has its own payroll, pays its own taxes, enters contracts on its own behalf and conducts administrative filings in its own name. I recognize some blurring of the business operations of PBB and Clarke arises in the record evidence, particularly in the deposition testimony by Doug Payne in

a separate, Tennessee case involving similar facts as the present matter. Regardless, I find the weight of the evidence supports Clarke's continued operation as a business entity.

Clarke seeks to enforce non-compete, non-solicitation and fiduciary obligation provisions in various agreements executed by Haskins. Injunctive relief is an extraordinary remedy that should only be granted in situations where legal remedies are insufficient. *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988). To obtain preliminary injunctive relief, Clarke must demonstrate: (1) a likelihood of success on the merits, (2) irreparable harm by the denial of injunctive relief, (3) granting relief will not result in even greater harm to the defendants, and (4) the public interest favors the injunction. *KOS Pharm. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). If all of these requirements are satisfied, Federal Rule of Civil Procedure 65(a) authorizes me to issue a preliminary injunction. In this case, I find Clarke has not met its burden to demonstrate the second requirement – irreparable harm – and therefore is not entitled to preliminary injunctive relief as to Haskins.[2]

To prove irreparable harm, Clarke must have suffered an injury that by its nature is incapable

---

[2]The record evidence sufficiently establishes Clarke would meet its burden to establish likelihood of success on the merits. The parties do not dispute Haskins breached the restrictive covenants by starting a competitive business which services some of Clarke's former clients and employs several former Clarke employees. I find the restrictive covenants are enforceable because they are ancillary to the Asset Purchase Agreement and incidental to an employment relationship between the parties, supported by consideration, and reasonably necessary for the protection of the employer. Additionally, because of the scope of Clarke's transportation business, the nationwide scope of the restrictive covenants is reasonable in geographic extent, and the three-year reach for the non-competition and customer non-solicitation provisions, one-year reach for the employee non-solicitation and five-year time limit on proprietary information are reasonable in duration. I further note that, although some evidence is favorable to defendants, Clarke may be able to make a showing of no greater harm to defendants from enforcing the covenants and the public interest favors injunction. Clarke's burden, however, is to demonstrate all four elements, including irreparable harm, are met to justify this Court's award of a preliminary injunction, and I find it has failed to do so.

of pecuniary measurement. *Nat'l Bus. Serv., Inc. v. Wright*, 2 F. Supp. 2d 701, 709 (E.D. Pa. 1998). "Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill." *Pappan Enter., Inc. v. Hardee's Food Sys.*, 143 F.3d 800, 805 (3d Cir. 1998). While I recognize Clarke has lost nearly all of its customers in the Malvern office and several to Haskins and her new, competing business, resulting in a projected revenue loss of $40.3 million to Clarke in 2006 and nearly shutting down the Malvern office, I am convinced that Clarke's business and reputation was irreparably harmed by its own managerial transgressions.

Emails and other documentation from several Clarke customers as well as internal Clarke emails reveal that beginning as early as August, 2005, Clarke began experiencing operational issues. For instance, between August and December, 2005, multiple customers complained of lost freight and significant delays in shipments. Notably, in mid-November, 2005, one major client deemed it "totally unacceptable" for Clarke and/or PBB "[t]o have $1.9 [million] outstanding on freight and 1,117 loads that [the client] cannot determine whether they have been delivered or not . . . ." Clarke and/or PBB also failed to properly invoice customers, including invoicing for shipments years after they actually had tendered the shipment to Clarke and misapplying or failing to apply funds to invoices while accounts receivable remained open on the books. Numerous emails related to problems associated with a new operating system implemented in August, 2005, which lacked proper functioning capabilities, incorporated numerous rate errors that the Malvern office did not have the capabilities of correcting as of the end of November, 2005, and did not properly transfer information. The operating system problems resulted in bills payable to prior vendors and other critical information being omitted from the new operating systems. As of December, 2005, these operational problems persisted.

Major accounts complained about the lack of support offered by Clarke and/or PBB, including but not limited to, complaints concerning capacity, expedited service, the ability to communicate information electronically, incorrect invoicing, and major delays on shipments due to the inability of the new operating systems. One major client sent an email as early as August, 2005, complaining of Clarke's and/or PBB's services and explaining "they do not have a high degree of confidence in the PBB ability to service [the] accounts." This same client, as well as others, threatened to suspend business with Clarke and/or PBB in September and November, 2005. At least three major accounts subsequently terminated business with Clarke, with one citing the operational issues as a factor in its decision to end the business relationship.

Nor is there any clear evidence Haskins solicited Clarke's former employees to her new business. The affidavits of each former employee contradicts such assertion and Clarke has offered limited evidence to support its claim. Moreover, the former employees currently working for Haskins's new business claim their departure from Clarke was due to the operational problems at Clarke and not because of recruitment efforts on Haskins's part. The evidence weighs in favor of the loss of Clarke's customer and employee base as precipitated by Clarke's operational issues, which Clarke has not proven are attributable to Haskins's conduct.

I recognize Clarke has been placed at a competitive disadvantage for future transportation business with the customers Haskins's business now services and the loss of employees; however, I find Clarke's own mistakes significantly contributed to this harm. Clarke cannot satisfy its burden to demonstrate Haskins's breach of the restrictive covenants has resulted in irreparable harm and therefore is not entitled to preliminary injunctive relief.

Clarke also asks this Court to enforce the Confidential Information provision in Skelston's

letter agreement which states:

> All notes, data, tapes, reference items, sketches, drawings, memoranda, records, diskettes and other materials in any way related to any of Clarke's Confidential Information, the Works or the Company's business, produced by you or coming into your possession by or through your employment with us, shall belong exclusively to the Company. You agree to turn over to us all copies of any such materials embodied or recorded in tangible in your possession or under your control, forthwith, at the request of [Clarke] or, in the absence of a request, on the termination of your employment with [Clarke].

(Aff. Doug Payne, Ex. Skelston Letter Agreement 3.) Clarke produced evidence Skelston has in his possession an April, 2005 document related to intermodal tariffs. This document falls within the confidentiality provision in Skelston's Letter Agreement because it constitutes pricing and customer information. According to the terms of the agreement, he agreed to turn over all copies of such document on the termination of his employment with Clarke. Other than this single document, Clarke has not met its burden to demonstrate what other documents Skelston possesses or has under his control that qualify as "Confidential Information," "Works," or "Company" business. Therefore, I will grant Clarke's request, but limit its scope to this single document. Accordingly, I enter the following:

## **ORDER**

AND NOW, this 7th day of June, 2006, Plaintiff's Motion for Temporary and Permanent Injunctive Relief (Document 24) is GRANTED in part and DENIED in part. It is hereby ORDERED that:

(1) Plaintiff's motion to enjoin Defendant Annemarie Haskins is DENIED because

Plaintiff has not met its burden of demonstrating irreparable harm, and

(2) Plaintiff's motion to enforce the Confidential Information provision in Defendant Ronald Skelston's letter agreement is GRANTED. Defendant Skelston is directed to immediately deliver to Plaintiff any and all copies of the April, 2005 document related to intermodal tariffs.

BY THE COURT:


      /s/ Juan R. Sánchez, J.
      Juan R. Sánchez, J.